# INDUSTRIAL COMMISSION v JONES

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 13, 1933

J. W. Bricker, Attorney General, Columbus, R. R. Zurmehly, Columbus, and J. H. Leighninger, Youngstown, for plaintiff in error.

C. H. Dyson, Youngstown, for defendant in error.

**OPINION**

By FARR, J.

From the judgment entered in the court below error is prosecuted here upon two grounds: **First,** the judgment is against the weight of the evidence, and **Second,** the refusal of the trial court to give a request to charge offered by the defendant below.

On the 6th day of February, 1929, Joseph R. Jones was an employe of the Youngstown Music Company. A part of his duties seems to have been to transport musical instruments and with the assistance of one Walker on the morning of this day, he was unloading a radio-victrola at the plant of the Music Company. It was being transported in a truck and the truck was perhaps slightly more than two feet higher than the platform on to which the radio was to be transferred from the truck. In order to accomplish this, Jones and Walker were at each side of the radio-victrola, lifting it from the truck down to the platform, the end gate of the truck having been lowered. As this work was in progress, and just as the instrument had settled upon the platform, Jones exclaimed, "Oh, hell, what's that?" It is said that he clasped his hand upon his shoulder. There is a little difference in the proof as to which shoulder. One witness says the left and perhaps another the right. Jones was immediately in pain, so it is said. He went to the office of his employer and no doubt reported the injury. He then went home for his lunch. He was on duty for the most of the afternoon, went home at five o'clock and went to bed, and it is rather clear that Jones was suffering pain from the time the radio-victrola rested upon the platform until he went to bed. A physician was called and the next day Jones was taken to the hospital and died five days later of lobar pneumonia.

It is claimed in this connection that the injury sustained by Jones at the time he was assisting Walker in unloading the radio-victrola, caused pneumonia. This was a heavy instrument, weighing about 150 pounds. It is claimed, as above stated, that at the time he sustained an accidental injury which resulted in pneumonia, and which caused his death.

As a matter of course it is necessary in a case of this kind to depend somewhat, in fact to a considerable extent, upon medical testimony. One physician was summoned and not being at home, Dr. Haas attended in his place. Mildred Jones testified to the condition of her husband and that he had suffered pain almost constantly from the time of the injury unloading the victrola until he was taken to the hospital, and perhaps until his death. Dr. Haas was examined and he is inquired of at page 29 of the record:

"Q. And did he tell you anything, Doctor, as to, did he give you any history of his trouble, Doctor?

A. I never questioned him anything about, concerning an injury at all. That part was not in my record. I never asked him a question concerning an injury. I had no reason for him to tell me whether he had an injury."

Dr. Haas says that Jones was suffering from lobar pneumonia at the time he first saw him, and says that he had a very rapid pulse and high fever.

"Q. Doctor, after he was removed to the St. Elizabeth Hospital, how long did he live there?

A. He lived about, to the best of my recollection, five days.

Q. Did his condition become worse after he got to the hospital?

A. Yes, sir, it was gradual. He became progressively worse from the time he entered the hospital until his death.

Q. Was all this pneumonia that you found there concentrated on the right side of his chest?

A. All that I found was on the right side of his chest.

Q. Now, Doctor, what would you say as to this statement of facts bringing on the condition that you found there, that if this young man on the afternoon previous to when you saw him had been in the act of taking a very heavy either victrola or radio, or combination of both, from a truck to a platform, and he had to lift this—the weight of this entire instrument down about a yard from the truck to the platform, and as he was doing so he let out a scream and let the machine down quickly and complained of severe pains through his right shoulder and chest. What would you say, Doctor, as to the probability of this injury which he received at this time bringing on the condition which you found when you saw him the next morning?"

There was an objection and finally the witness was permitted to answer, and the answer follows:

"A. The etiology of pneumonia, of course, is the germ called the pneumococcus. The condition depends on predisposing factors in any case. One of these predisposing factors may be trauma, usually from crushing injury."

This is on page 30 of the record. And then another question is asked:

"Q. Now, Doctor, stating to you that this young man had been in perfect health prior to this injury to his chest; that is to say, that he was not suffering from any cold or any illness of any kind, and immediately after this injury he began to suffer with a severe pain in his chest, and then developed this pneumonia that you speak of, Doctor, would you say from that statement of facts, that the injury was the probable cause of his sickness and death?"

Objection and objection is overruled, and then there is some discussion between counsel and the court, and on page 32 Dr. Haas states, in answer to the foregoing question:

"A. I would state that the injury could have something to do with the cause of his pneumonia but under the present day status, it would be impossible for me to say that it was the cause. It has been proven and I have seen papers before where undoubtedly trauma to the chest was the exciting cause, brought on the pneumonia."

Dr. Haas is the physician testifying in behalf of the claimant. He states frankly that it would be impossible for him to say that the injury was the cause of the pneumonia and death. Then he states that pneumonia may result from trauma; that is, to say, that trauma may be the exciting cause, but still he says that there must be the germ pneumococcus in order to produce pneumiona, and this is the difficulty with the testimony in this record. There is no testimony on the part of any medical witness that pneumonia might immediately result from a situation of that kind. This injury was about eleven o'clock. At five o'clock that evening Jones went to bed and he had been suffering pain ever since the time of lifting the radio to the platform, but there isn't any medical testimony developed as to the length of time that pneumonia might or would develop under such circumstances, and that is the difficulty with the proof in this case. Wr. Watters of the Industrial Commission testifies at considerable length quite to the contrary of Dr. Haas, but the jury saw fit to believe Dr. Haas, which was their privilege, but this court does not feel in the light of this record that Dr. Haas is positive that the injury caused pneumonia; that is, he could not say that the injury was the cause, and with no medical proof in the record that pneumonia might have developed from an injury, if some medical witness had testified that pneumonia might immediately result from such injury, then there would have been that which perhaps may be called a pathological effect of the injury to the pneumonia that caused this unfortunate man's death.

Under the circumstances it may not well be said that the verdict is sustained by sufficient evidence.

There is another ground of error and that is that the trial court refused to give this instruction:

"If you find from the preponderance of the evidence, only from the circumstances, whereby you infer that the plaintiff's husband sustained the injury in the course of his employment, you can not further infer that said injury caused his death. There must be some direct evidence upon that before you can so find, and if you find no such evidence, then your verdict must be for the defendant."

This instruction states a correct principle of law as recognized in Ohio, that an inference can not be based upon an inference. **Sobolitz v Oil Co., 107 Oh St, 204.** The trial court was asked to submit that

proposition to the jury, which request was refused, and it was error so to do. Therefore, upon the two grounds, that the judgment is not sustained by sufficient evidence and for the refusal of the trial court to give the instruction, the judgment must be reversed and the cause remanded.

Judgment reversed.

POLLOCK and ROBERTS, JJ, concur in the judgment.